F. W. SIMS & COMPANY, plaintiffs in error, v. ROBERT C. HUMBER, defendant in error.

(Atlanta, June Term, 1870.)

NEW TRIAL—VERDICT CONTRARY TO EVIDENCE—EVIDENCE CONFLICTING.*—The presiding Judge of the Superior

---

*See foot-note to Wall v. McCrary, 36 Ga. 56.

Sims & Co. v. Humber

Court has no legal power or authority to set aside the verdict of a jury when the evidence is conflicting, unless the verdict is decidedly and strongly against the weight of the evidence; the jury, and not the Court, are the exclusive judges as to the credibility of the witnesses and of the weight of their testimony, and no rule of law having been violated in submitting the facts to the jury in this case, the verdict, under the evidence contained in the record, is not so decidedly and strongly against the weight of the evidence as to authorize the Court, under the law, to set the verdict aside and order a new trial.

New Trial. Before Judge Schley. Chatham Superior Court. May Adjourned Term, 1869.

Humber brought case against F. W. Sims & Company, factors and commission merchants, averring that on the 23d of December, 1867, he shipped to them, at Savannah, forty-five bales of cotton, with instructions not to sell it until ordered by him to do so, and that they sold it without such order, to his damage, etc. On the trial, the shipment of the cotton, its receipt and sale, and that cotton afterwards rose in price, etc., were shown. The point of contest was as to giving the order to hold it as averred.

Humber testified, that on the 23d of December, 1867, he put the cotton at Dennis' Station, and next day, at Eatonton, *told Reid, defendants' agent, to ship it to defendants, and that he wished an advance, including what Reid owed him, of $800 00 or $1,000 00, but not to sell the cotton; that he had lost on his cotton the year before by holding it, and intended to hold this year and make up the loss; that Reid seemed annoyed about other business, and he pointedly repeated these instructions, and Reid replied, "Very well." J. W. Davis and Clark Davis were present. Two days after, Reid handed Humber $1,000 00, which Humber considered as $500 00 in payment of Reid's debt, and $500 00 for advance on said cotton; Humber left home and was absent some time. About the middle of January, 1868, upon his return home, Humber was surprised at finding the account of the sales of said cotton. He went to see Reid, and even before the usual salutations, Reid asked him if he had ordered said cotton sold, and upon his replying "no," Reid said he (Humber) should sue defendants for disobeying instructions. He said he would, and told Reid he would write defendants; he wrote, and Reid said he would endorse the letter. Humber left the letter with Reid, and refunded him the $500 00 advanced. He was ready to refund the balance had it been demanded. He took the proceeds of his cotton but upon condition that Reid would take a receipt specifying that said sale was not ratified, etc.

John W. Davis testified by Interrogatories that Humber at said first interview told Reid that he had lost money by holding his cotton the last year, and wished to hold this to get back his loss, and wished $800 00 advanced.

For the defendant, Reid testified by Interrogatories, that

two or three weeks before said shipment, Humber borrowed from him $1,000 00 as an advance on cotton, and stated that in a few weeks he would ship defendant's forty-eight bales of cotton; he then said something about having lost last year by holding cotton, and impressed Reid with the idea that he would soon sell the cotton and re-pay the borrowed money. When said cotton was delivered at Dennis' Station, Reid was not present and knows not who received it. Reid remembered no instructions on the subject, and said that he had no *interview with Humber from the borrowing of the money until after the sale of the cotton. Reid was defendant's agent, but did not advance their money on the cotton, he advanced his own, and the defendants repaid him; this was usual between them. He said Humber did protest against the sale, but on the same day received $500 00 with a verbal protest, and several days afterwards took the balance and gave a receipt for said proceeds, $2,748 34, specifying therein "the receipt of this money, is by no means a ratification of the sale of said cotton against my express orders, but is only accepted as a payment pro tanto, or to that extent of my claim against said F. W. Sims & Company, for the value of my cotton wrongfully sold by them." This receipt was read in evidence. It was dated the 15th of February, 1868. By a second set of Interrogatories, Reid reiterated substantially, his aforesaid testimony, and said that Humber insisted that his instructions which had been violated, were given from Atlanta by letter, though he did say he told Reid that he intended holding the cotton; by reference to his books he finds that at the date of said shipment Humber owed him $758 27, besides the advance, for taxes advanced, bagging, rope, etc. Davis again, by Interrogatories, testified with a little more particularity what he had stated aforesaid. Defendants read in evidence Interrogatories of Humber, in which he said his words to Reid were, "I want $800 00 or $1,000 00, including what you owe me, but don't you sell my cotton."

Defendants read in evidence a letter from Humber, dated the 20th of January, 1868, in which he said: "I wrote you from Atlanta on the 30th or 31st of last month in these words: "please hold my cotton until further orders." The balance was a comment upon the sale, and a statement that he would not settle with Reid according to their account of sales, and that he told Reid before the cotton was shipped, that he did not wish it sold. On this letter Reid had endorsed, "Colonel Humber is willing to settle at the price the cotton will bring to-day or yesterday, and if you will pay the taxes. He is not in need of money and did not wish *the cotton sold on that account." They read in evidence another letter of the 25th of January, 1868, urging his side of the matter but presenting no new fact. Sims then testified that they received no such instructions from Reid,

nor Humber's letter from Atlanta, and made the sale in the usual course of business, etc.

The jury found for the defendants. Humber moved for a new trial upon the grounds that the verdict was contrary to law and the evidence.. The Court granted a new trial, and that is assigned as error.

George A. Mercer, by T. E. Loyd, for plaintiff in error. T. M. Norwood, by brief, for defendant.

WARNER, J.

The error assigned to the judgment of the Court below, is in granting a new·trial in the case, on the ground that the verdict is contrary to the evidence and the weight of the evidence. The evidence as exhibited by the record, is conflicting in regard to the main question in controversy between the parties. According to the repeated rulings of this Court, the presiding Judge has no legal power or authority to set aside the verdict of the jury, on the ground that it is contrary to the evidence and the weight of the evidence where the evidence is conflicting, unless the verdict is decidedly and strongly against the weight of the evidence: Flournoy v., Newton, 8th Georgia Reports, 306; Fowler v. Waldrip, 10th Georgia Reports, 351; Finney v, Sanford, decided during the. present term. When the evidence is conflicting, the jury, and not the Court, are the exclusive judges as to the credibility of the witnesses and. of the weight of their testimony, and no rule of law having been violated in submitting the facts to the jury in this case, the verdict, under the evidence contained in the record, is not, in our judgment, so decidedly and strongly against the weight of the evidence as to authorize the Court, under the law, to set the verdict aside and order a new trial.

Let the judgment of the·Court below be reversed.